UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
ROBERT DU PURTON,

                            Petitioner,

        -against-                                     **MEMORANDUM OF**
                                                                                  **DECISION & ORDER**
UNITED STATES OF AMERICA,                        15-CV-1026 (ADS)

                            Respondent.
----------------------------------------------------------------X

**APPEARANCES:**

**Carlton Fields Jorden Burt, P.A.**
*Attorneys for the Petitioner*
405 Lexington Avenue
29th Floor
New York, New York 10174
      By: Brian Rosner, Esq., Of Counsel

**United States Attorney's Office**
**Eastern District of New York**
*Attorneys for the Respondent*
271 Cadman Plaza East
Brooklyn, New York 11201
      By: Paul G. Scotti, Assistant U.S. Attorney

**SPATT, District Judge.**

      Similar to the facts in <u>United States v. Romano</u>, 794 F.3d 317 (2d Cir. 2015), this case involves an alleged scheme to sell rare coins at inflated prices through fraud and misrepresentation. Robert du Purton (the "Petitioner"), as the owner and president of four coin-selling companies, was charged with and convicted of mail fraud, conspiracy to commit mail fraud, and conspiracy to commit wire fraud. Having served his sentence, he is no longer in custody.

1

The Petitioner filed this writ of error coram nobis under the All Writs Act, 28 U.S.C. § 1651(a), to vacate his conviction, claiming that the testimony of Anthony Swiatek, a coin valuation expert, was unreliable. However, the Second Circuit approved this expert's methodology in the Romano decision. Thus, for this reason and others, the amended petition is denied in its entirety.

## I. BACKGROUND

The Court assumes familiarity with the facts of this case, which are set forth in the Court's prior decisions. See, e.g., United States v. Numisgroup Int'l Corp., 170 F. Supp. 2d 340 (E.D.N.Y. 2001), aff'd, 368 F.3d 880 (2d Cir. 2004) (per curiam), cert. granted, judgment vacated sub nom. Dupurton v. United States, 543 U.S. 1098, 125 S. Ct. 991, 160 L. Ed. 2d 997 (2005) (remanded in light of the new Supreme Court precedent that affected the Federal Sentencing Guidelines). When citing to any documents, the Court will use the page numbers assigned by the CM/ECF system, not the internal page numbers.

### A. The Trial

The key issue at the trial was the grade and value of the Petitioner's coins. A "grade" is a measure of a coin's overall quality on a seventy-point scale, which, in turn, establishes the fair market value. A one-point difference may substantially alter a coin's worth. For example, a numeric grade of sixty-six is worth ten times more than a numeric grade of sixty-four. The primary factors in assessing a coin's grade—the coin's luster, visual appeal, lack of surface defects, among others—are assessed by the naked eye. Therefore, to overcome subjective grading, the Professional Coin Grading Service ("PCGS") has attempted to create fixed and reliable standards.

Two sets of coins are relevant for present purposes. The first set is 702 coins that were owned by the Petitioner's customers and offered into evidence at the trial (the "Trial Coins"). The second set is the Petitioner's inventory of 26,600 coins that were confiscated by the Government upon his arrest (the "Inventory Coins").

The Government's case included two experts in the coin industry: Richard Montgomery and Anthony Swiatek. Both experts graded the Trial Coins, but only Swiatek appraised them. As for the experts' qualifications, Montgomery was the president of PCGS at the time of the trial. Swiatek operated a full-time coin business since 1979; authored three books on the coin industry; relied on widely accepted pricing guides; personally graded over one million coins; and personally appraised approximately 300,000 coins. The Petitioner objected to Swiatek's testimony, arguing that it was too speculative. However, the Court overruled the objection, finding him to be "extremely well-qualified" despite the subjective factors used in coin grading. (Trial Tr. at 4768.)

The pair of experts arrived at the same grade for at least ninety percent of the Trial Coins. By contrast, Montgomery's grade matched the Petitioner's for only fifteen percent, or approximately 105 of the 702 coins. For the remaining 597 coins, Montgomery graded 397 lower than the Petitioner, and the other 200 were ungradable because of alterations or damages. Most of Montgomery's grade differences were two points or higher.

Similarly, Swiatek concluded that the majority of the Trial Coins were "vastly overgraded and vastly overpriced." (Trial Tr. at 4894.) This conclusion was bolstered by the testimony of the Petitioner's former customers and employees.

Ultimately, on May 17, 2001, the Petitioner was convicted of mail fraud, conspiracy to commit mail fraud, and conspiracy to commit wire fraud. The Court sentenced him to fifty-one

months of imprisonment and ordered him to pay $1,873,819 in restitution, jointly and severally with other defendants. (Judgment, Case No. 00-CR-0352-ADS-5, Dkt. No. 453, at 4.)

**B. The Inventory Coins**

During the sentencing phase, the Court permitted the Government to sell the Inventory Coins at a public auction and to apply the proceeds to the restitution payment. The Government then employed Swiatek to determine the value of the Inventory Coins. In 2001, right after the trial, he valued them at $430,000. On December 13, 2010, the Inventory Coins were sold at a public auction for $1,827,176. No other details have been provided to the Court about the public auction. However, at the very least, the nine-year time lapse does not account for the wide disparity between Swiatek's appraisal and the auction price. (Am. Pet. ¶¶ 46–54 (calculating a 23% increase between the coin prices in 2001 and 2010 based on inflation rates and market movement in the coin industry).)

**C. The Present Petition**

The Petitioner initially moved for <u>coram nobis</u> relief on February 27, 2015 but then filed an amended petition eight days later. (Dkt. Nos. 1, 2.) What occurred before that filing is relevant as to the timeliness of this petition:

- **October 28, 2005:** The Petitioner commenced his fifty-one-month sentence. (Judgment at 1–2.)

- **February 23, 2009:** The Court entered a final order of forfeiture, which directed the United States Marshals Service to dispose of and fully liquidate the Inventory Coins. (Case No. 00-CR-0352-ADS-5, Dkt. No. 466.)

- **December 13, 2010:** The Inventory Coins were sold at a public auction. (Case No. 00-CR-0352-ADS-5, Dkt. No. 494, at 1.)

- **November 2013:** For the first time, the Petitioner asked the Government to provide him with the balance of his restitution payment. He allegedly did not know what the Inventory Coins sold for or if any payments were made by his co-defendants. It is unclear when the Petitioner learned of the public auction's date. (Am. Pet. ¶¶ 23, 26.)

4

- **March 27, 2014:** The Government responded to the November 2013 request, informing the Petitioner that approximately ten percent of the restitution payment, or $201,466.79, remained to be paid. (Mar. 27, 2014 Ltr., Dkt. No. 1-8, Ex. 9A, at 9.)

The Petitioner asserts that he first learned of the public auction sale price, namely $1,827,176, at some point in April 2014. (May 6, 2014 Ltr., Dkt. No. 1-8, Ex. 9C, at 18.) He then retained counsel to retrieve the documents necessary to support a case, such as trial transcripts and coin valuation charts. The last document was obtained in November 2014, and the Petitioner filed his initial petition on February 27, 2015, three months later. (Am. Pet. ¶¶ 28–29.) In sum, four years had elapsed after the public auction, and approximately ten months elapsed after the Government's March 27, 2014 correspondence and the Petitioner's April 2014 discovery.

As to the merits, the Petitioner argues that Swiatek's methodology was subjective and "grossly unreliable" in light of the public auction. (Am. Pet. ¶ 59.) As explained below, however, this argument suffers from three fatal flaws. First, the Petitioner already challenged Swiatek's methodology during the trial, in a post-trial motion, and on appeal—without success. Second, the Second Circuit explicitly rejected the Petitioner's argument in the Romano decision. Third, Swiatek's testimony was only a portion of the Government's evidence of fraud. The jury could have convicted the Petitioner without Swiatek's conclusions. Thus, the Petitioner's coram nobis petition is denied in its entirety.

## II. DISCUSSION

### A. The Legal Standard as to a Writ of Coram Nobis

Coram nobis relief is "an 'extraordinary remedy' available only in rare cases." Kovacs v. United States, 744 F.3d 44, 54 (2d Cir. 2014) (quoting United States v. Morgan, 346 U.S. 502, 511, 74 S. Ct. 247, 252, 98 L. Ed. 248 (1954)). Its application is "strictly limited to those cases

in which errors . . . of the most fundamental character have rendered the proceeding itself irregular and invalid." United States v. Foont, 93 F.3d 76, 78 (2d Cir. 1996) (ellipsis in original) (internal quotation marks omitted). The writ is "essentially a remedy of last resort" because unlike habeas relief, the petitioner is no longer in custody. Fleming v. United States, 146 F.3d 88, 89–90 (2d Cir. 1998) (per curiam); see also United States v. Mandanici, 205 F.3d 519, 532 (2d Cir. 2000) (Kearse, J., concurring) ("[T]he granting of coram nobis normally results in the expungement of the conviction, with no possibility of further proceedings to determine whether the petitioner was guilty of the offense charged."). "The harm to the petitioner is therefore much less and, accordingly, courts are more reluctant to grant relief." Moskowitz v. United States, 64 F. Supp. 3d 574, 577–78 (S.D.N.Y. 2014) (collecting cases).

In light of this high bar, the Petitioner must make three showings: (1) "there are circumstances compelling such action to achieve justice"; (2) "sound reasons exist for failure to seek appropriate earlier relief"; and (3) "the Petitioner continues to suffer legal consequences from his conviction that may be remedied by granting of the writ." Kovacs, 744 F.3d at 49 (capitalization altered) (internal quotation marks omitted). The Court presumes that the prior proceedings were correct, and "the burden rests on the accused to show otherwise." Morgan, 346 U.S. at 512, 74 S. Ct. at 253.

**B. As to the Timeliness of the Petition**

The Second Circuit has stated that the timeliness of the petition is "a threshold procedural hurdle to obtaining coram nobis relief." Dixon v. United States, No. 14–CV–960 (KMK), 2015 WL 851794, at *6 (S.D.N.Y. Feb. 27, 2015) (citing United States v. Foont, 901 F. Supp. 729, 732–33 (S.D.N.Y.1995), aff'd, 93 F.3d 76 (2d Cir. 1996)); Worlumarti v. United States, 613 F. App'x 69, 71–72 (2d Cir. 2015) (summary order). Therefore, the Court's analysis will begin

6

with the second prong stated above—that is, whether the Petitioner has offered "sound reasons" for the delay in filing his petition. Kovacs, 744 F.3d at 49 (internal quotation marks omitted).

Without an applicable statute of limitations, the Court considers timeliness on a case-by-case basis. Compare Foont, 93 F.3d at 81 (five-year delay) with Cisse v. United States, 330 F. Supp. 2d 336, 344 (S.D.N.Y. 2004) (one-year delay). For example, the Court may ask whether the Petitioner acted diligently and whether he obtained a tactical advantage from the delay. See Kovacs, 744 F.3d at 54.

The Petitioner uses the Government's 2014 correspondence as a starting point—in other words, the first time that he learned that he might have a claim. (Am. Pet. ¶ 26.) After the Government responded to the Petitioner's November 2013 inquiry about the public auction, he took nine and a half months to gather evidence, build a case, and file his coram nobis petition. (Am. Pet. ¶¶ 28–29.) However, the final order of forfeiture, which directed the United States Marshals Service to liquidate the Inventory Coins, was entered in February 2009. The Petitioner has offered no justification for waiting four years to inquire about a public auction. In the Court's view, the Petitioner did not wait to file his petition to gain a tactical advantage, but he did not act diligently. Nor has he suggested that anything prevented him from inquiring about the public auction sooner.

To address these concerns, the Petitioner requests an evidentiary hearing. (Am. Pet. ¶ 60.) However, a hearing is unnecessary because even if the Petitioner could offer a valid reason for the delay, his claim fails on the merits.

**C. As to the Merits of the Petition**

The Petitioner's argument is twofold: (1) Swiatek's methodology is unreliable in light of a nondescript public auction, and (2) the jury would not have convicted the Petitioner without Swiatek's testimony. (Am. Pet. ¶¶ 55–59.)

As an initial matter, the Petitioner essentially "seeks to relitigate issues already addressed in his direct appeal." See Ejekwu v. United States, No. 02 CV 699(SJ), 2005 WL 3050286, at *3 (E.D.N.Y. Nov. 14, 2005); accord Foont, 93 F.3d at 80 ("Claims of new evidence . . . without constitutional or jurisdictional error in the underlying proceeding[] cannot support a coram nobis claim."). To be sure, the Court recognizes the wide disparity between Swiatek's 2001 appraisal and the 2010 auction price. However, the Petitioner asserts that "[t]he reason for the huge disparity is the unreliability, and consequent inaccuracy, of Mr. Swiatek's appraisal methodology." (Am. Pet. ¶ 54.) This argument—that Swiatek's methodology is unreliable—was rejected during the trial, in a post-trial motion, and on appeal. Swiatek's practices are widely accepted in the coin industry and are based on objective sources, such as pricing guides. By contrast, it is unclear how the public auction proceeded, which Inventory Coins were perceived to be valuable, and how many of those Inventory Coins were sold at a price beyond a typical estimation. Against the interests of finality, the Petitioner has not presented compelling circumstances that warrant review. See United States v. Denedo, 556 U.S. 904, 911, 129 S. Ct. 2213, 2220, 173 L. Ed. 2d 1235 (2009) (instructing courts "[t]o confine the use of coram nobis so that finality is not at risk in a great number of cases").

In any event, the Second Circuit directly addressed the Petitioner's argument in United States v. Romano, 794 F.3d 317 (2d Cir. 2015), in which the Government relied on Swiatek's expert opinion in another coin fraud case. The court upheld Judge Bianco's decision to admit

Swiatek's testimony on "coin grading and valuation processes." Id. at 332–33. Foreshadowing the Petitioner's argument, the court recognized that coin grading is "a subjective measure" but still uses a "core set of principles." Id. at 328 (internal quotation marks omitted). The court observed that Swiatek's methods were "not entirely replicable because they are based in part on his personal experiences as a coin dealer for several decades." Id. at 333. In that regard, any objections to his testimony "went to the weight of the evidence, not to its admissibility." Id. Therefore, in light of Romano, principles of stare decisis foreclose the Petitioner's claims, and he has not offered any persuasive reason to hold otherwise.

In the alternative, the Court finds that sufficient evidence supports the Petitioner's conviction even without Swiatek's testimony. Montgomery arrived at the same grade as Swiatek for at least ninety percent of the Trial Coins. As this Court observed, "[t]he grade of a coin is the predominant factor in a consumer's decision to purchase a coin; it is what the customer is bargaining for." Numisgroup Int'l Corp., 170 F. Supp. 2d at 350 aff'd, 368 F.3d 880 (2d Cir. 2004) (per curiam) (affirming the judgment "for substantially the reasons stated by the District Court in its thorough decision"), rev'd on other grounds sub nom. Dupurton v. United States, 543 U.S. 1098, 125 S. Ct. 991, 160 L. Ed. 2d 997 (2005). Moreover, the Government's case included testimony from the Petitioner's former customers and employees, which detailed systematic overgrading by the Petitioner and his companies. Accordingly, the Petitioner's argument that the primary basis of his conviction was Swiatek's testimony is incorrect.

The Petitioner has not established an "extraordinary" circumstance, Morgan, 346 U.S. at 511, 74 S. Ct. at 252, or a "fundamental" error, Foont, 93 F.3d at 78 (internal quotation marks omitted), that warrants coram nobis relief. Thus, the amended petition is dismissed in its entirety.

## III. CONCLUSION

The Petitioner's amended petition (Dkt. No. 2) is DENIED. The Clerk of the Court is respectfully directed to close this case.

**SO ORDERED.**
Dated: Central Islip, New York
December 16, 2016

*/s/ Arthur D. Spatt*
ARTHUR D. SPATT
United States District Judge